IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLIED ORTHOPEDIC ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRIAN LEONETTI, et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 18-01566 |

## OPINION

**Slomsky, J.**                                                                    **August 24, 2018**

## I.    INTRODUCTION

Plaintiff Allied Orthopedic Associates, Inc. ("Allied") brings this action against Defendants Brian Leonetti, its former employee, and Nuvasive, Inc., an alleged competitor with which Leonetti began employment after leaving Allied's employ.[1]  (Doc. No. 1-1.)  Plaintiff alleges causes of action for breach of contract, tortious interference with contractual relations, tortious interference with business relations, violation of Pennsylvania's Uniform Trade Secrets Act and civil conspiracy.  (Id.)

Plaintiff initiated this action on April 2, 2018 by filing a complaint in the Montgomery County Court of Common Pleas.  (Id.)  On April 3, 2018, Plaintiff filed a Motion for Preliminary Injunction in state court.  (Id.)  On April 13, 2018, Defendants removed the action to this Court. (Id.)

---

[1]  Plaintiff Allied is a Pennsylvania Corporation with its principal place of business in Pennsylvania.  (Doc. No. 1-1 ¶ 1.)  Defendant Leonetti is an adult individual currently living in Wilmington, Delaware.  (Id. ¶ 2.)  Defendant Nuvasive is a Delaware corporation with its principal place of business in California.  (Id. ¶ 3.)

On May 17, 2018, Plaintiff filed a Motion for Preliminary Injunction in this Court. (Doc. No. 10.) Plaintiff seeks injunctive relief to protect its legitimate business interests and enforce the terms of its non-competition agreement with Leonetti. (Id.) On June 6, 2018, Defendants filed a Response in Opposition to the Motion for Preliminary Injunction. (Doc. No. 15.) On August 8 and 9, 2018, a hearing was held on the Motion. (Doc. Nos. 26, 27.) At the conclusion of the two-day hearing, the parties were given until August 17, 2018 to file supplemental memoranda, which they timely filed. (Doc. Nos. 30, 31.) The Motion for Preliminary Injunction is ripe for a decision.[2] For the reasons that follow, the Motion for Preliminary injunction (Doc. No. 10) will be granted.

## II.    BACKGROUND

### A.  Factual History

Allied is a manufacturer's representative that sells medical equipment used in the surgical treatment of spine and other orthopedic disorders. The manufacture and sale of such medical equipment is in a highly competitive industry. (Doc. No. 30, Ex. B at 37.) On May 6, 2008, Allied offered Leonetti a position as a sales associate contingent on the execution of a non-competition agreement. (Doc. No. 1-1, Ex. A; Pl.'s Ex. 2.) On May 15, 2008, Leonetti commenced employment with Allied and executed a Non-Competition, Non-Solicitation and Confidentiality Agreement ("Non-Compete Agreement"). (Pl.'s Ex. 4.) By signing the Non-Compete Agreement, Leonetti acknowledged that as a sales associate with Allied, he would be

---

[2]  In reaching a decision, the Court has considered the Complaint (Doc. No. 1-1), the Motion for Preliminary Injunction (Doc. No. 10), Defendants' Response in Opposition (Doc. No. 15), the hearing on the Motion for Preliminary Injunction held before the Court on August 8, 2018 (Doc. No. 27), Plaintiff's Supplemental Memorandum in Support of its Motion for Preliminary Injunction (Doc. No. 30) Defendants' Supplemental Memorandum in Opposition to the Motion for Preliminary Injunction (Doc. No. 31), and the evidence of record in this case.

privy to confidential information and trade secrets of both Allied and its clients.  (Id.)  Section 3

of the Non-Competition Agreement reads as follows:

> Confidential Information and Trade Secrets:  Employee recognizes and acknowledges that he/she may have access to confidential information and trade secrets concerning Allied, which are of a special and unique value which may include, with limitation, books and records relating to operations, finances, cash, bank accounts, accounting; sales personnel and management; actual and potential business or promotional opportunities, marketing plans and strategies; policies, and matters relating particularly to operations such as customer names, address, telephone numbers and price lists; customer service requirements; costs of providing service and equipment; routing information; operations and maintenance costs; pricing matters; market place analyses; computer software; database programs; and internal procedures, standards and productivity tools.  The protection of this confidential information and trade secrets against unauthorized disclosure and use is of critical importance to Allied, and Employee agrees that he/she will not, directly or indirectly, at any time while employed by Allied and within eighteen (18) months after termination with Allied, with or without cause, make any independent use of, or disclosure to any person other than an employee of Allied, or any organization except as authorized by Allied, any confidential information or trade secrets of Allied.  This provision shall not be applicable to information disclosed by the employee during testimony under subpoena in any court or before any administrative agency or during any governmental inquiry or investigation.

(Id. § 3.)

The Non-Compete Agreement also contains a non-competition provision that bars

Leonetti from engaging in competitive activity for a period of eighteen (18) consecutive calendar

months after termination of employment, with or without cause.  Specifically, Sections 4 and 4a

of the Non-Compete Agreement read as follows:

> Non-competition:  The Employee recognizes that in each of the highly competitive businesses in which Allied is engaged, personal contact is important in securing new customers and in retaining the accounts and good will of present customers.  Personal contact is a valuable asset and is an integral part of protecting the business of Allied.  The Employee recognizes that his/her position requires him/her to have substantial contact with Allied customers, for that reason, he/she is in a position to take for his/her benefit the good will Allied presently has as well as the good will that Allied pays Employee to develop and maintain for Allied's benefit.  The Employee also has access to Allied's confidential information and trade secrets, as described in Paragraph 3.  If, after leaving Allied's employment, Employee takes advantage of such confidential and

proprietary information, then the competitive advantage that Allied created though its efforts and investment will be irreparably harmed. For these reasons, the Employee agrees that he/she will not engage in any competitive activity.

4a. Scope: This agreement not to engage in competitive activity is limited in scope as follows:

A) Employee promises not to engage in competitive activity at any time during Employee's employment with Allied; and

B) Employee promises not to engage in competitive activity for a period of eighteen (18) consecutive calendar months after the termination, with or without cause, of his/her employment with Allied in:

    a. Each and every geographic area assigned by Allied to Employee during the eighteen (18) month period preceding termination of Employee's employment with Allied; and

    b. The geographic area attached hereto, incorporated herein and marked as Exhibit "A," which is the geographic area that Allied currently conducts business.

(Id. §§ 4, 4a.)

The Non-Compete Agreement also contains a non-solicitation provision barring Leonetti from, inter alia, soliciting or accepting business from Allied's customers for a period of 18 months. This provision, Sections 5 and 5a, reads as follows:

Non-Solicitation: The Employee further agrees for the interests identified in paragraph 4 and other interests, that he/she will not directly or indirectly:

A) induce any customers of Allied to patronize any similar business which competes with Allied;

B) canvas, solicit, or accept any similar business from any customer of Allied;

C) request or advise any customers of Allied to withdraw, reduce, or cancel such customer's business with Allied;

D) disclose to any other person, firm, partnership, or corporation the names, addresses, or telephone numbers, or other protected information of any of the customers of Allied; or

E) induce, canvas solicit, request or advise any employees of Allied, to accept employment with any person, firm or business which competes with any business of Allied.

5a.   Scope:   The agreement not to engage in any of the activities described in paragraph 5 is limited in scope as follows:

A)   Employee promises not to engage in any of the activities described in paragraph 5 at any time during Employee's employment with Allied, except for the benefit of Allied; and

B)   Employee promises not to engage in any of the activities described in paragraph 5 for a period of eighteen (18) consecutive calendar months after the termination, with or without cause, of his/her employment with Allied in:

    a.   Each and every geographic area assigned by Allied to Employee during the eighteen (18) month period preceding termination of Employee's employment with Allied; and,

    b.   The geographic area hereto, incorporated herein, and marked as Exhibit "A," which is the geographic area that Allied currently conducts business.

(Id. §§ 5, 5a.)

Allied's clients require that its sales representatives agree to restrictive covenants so as not to be placed at a competitive disadvantage should Allied's sales associates decide to work for a competitor.  (Doc. No. 1, Ex. A.)  One such client, Zimmer Spine, Inc., also a direct competitor of Nuvasive, executed a Sales Representative Agreement with Allied on or about January 1, 2010 by which Allied was appointed to sell Zimmer's products.  (Doc. No. 30, Ex. B at 9.)

On January 25, 2010, Allied and Leonetti executed another Confidentiality, Non-Competition and Non-Solicitation Agreement (hereinafter referred to as the "Zimmer Non-Compete Agreement").  (Pl.'s Ex. 5.)  The Zimmer Non-Compete Agreement has an integration clause that reads as follows:

This Agreement constitutes the complete understanding between the parties with respect to the subject matter thereof, and all prior representations or agreements relating thereto have been merged into this Agreement, excluding pre-existing non-competition and non-solicitation covenants between Sales Associate and Representative.   The terms of this Agreement shall control any conflicting provisions of any such prior covenants.  No waiver, alteration or modification of any of the provisions of this Agreement shall be valid unless made in writing and signed by both parties and by Zimmer.

(Id. ¶ 16.)

The geographic area in which Allied did business at the time Leonetti commenced employment with Allied included New Jersey, Pennsylvania, Delaware, Maryland, Virginia, the District of Columbia, West Virginia (Charleston and surrounding area), and the eastern part of Ohio. (Doc. No. 1-1, Ex. B.) After selling segments of its business, however, Allied currently operates only in Delaware and Philadelphia and the Philadelphia suburbs.[3] (Doc. No. 30, Ex. B at 11-12.) Hospitals and hospital networks Allied calls upon include Thomas Jefferson, Penn, Hahnemann, Shriners, Abington, Temple, Einstein, Paoli, Coatesville, Capital Health and Virtua. (Id., Ex. C at 12, 92-93.)

During his employment with Allied, Leonetti was assigned by Allied to six surgeons (Doctors Bose, Boulus, Eskander, Fischer, Murray and Rastogi), who operate at three hospitals in Delaware (A.I Dupont, Christiana and St. Francis), a surgery center in Maryland and Chester County hospital, which is located in Philadelphia. (Id., Ex. B at 99:15 to100:11, 114:17 to 115:4; 99:7-24, 103:25 to 105:20; id., Ex. C at 56:4-9.)

### B. Leonetti's Training and Acquisition of Specialized Knowledge

At the time of his hire in 2008, Leonetti was twenty-three years old, had recently graduated college and had no training or experience as a manufacturer's representative or as a sales associate in the medical device industry. (Doc. No. 1-1 ¶ 19.)

Between June 2 and 7, 2008, Allied sent Leonetti to Minneapolis, Minnesota for a one-week training course through the Zimmer Spine Sales Training Program, which addressed topics including spine anatomy, indications for surgery, spinal instrumentation, lumbar and cervical

---

[3] In the Complaint, Plaintiff asserts that Allied's sales are currently limited to eastern Pennsylvania, southern New Jersey and Delaware. (Doc. No. 1-1.) It was revealed at the hearing, however, that Allied's sales currently are limited to hospitals in Delaware, Philadelphia and the Philadelphia suburbs. (Doc. No. 30 at 11; id., Ex. B at 11-12.)

interbody fusion devices, lumbar and cervical spinal fixation devices and allograft bone products. In addition, the training included education in blood borne pathogen safety, operating room protocol and HIPAA fundamentals. (Doc. No. 1-1, Ex. D.)

In 2017, Allied sent Leonetti to Las Vegas for Timberline Lateral Training. This training program pertains to a product that is directly competitive with a product manufactured and sold by Nuvasive. (Id. ¶ 24.)

Leonetti's position and responsibilities as a sales associate required that he develop a specialized knowledge of the products and procedures of Allied's clients; establish relationships with physicians, hospital networks and other health care providers throughout his sales territory; attend surgeries in which the products of Allied's clients would be used; understand the marketing strategies of Allied and its clients; and have intimate knowledge of Allied's strategic plans, pricing practices, product margins, product information and other confidential information and trade secrets. (Id. ¶ 25.)

### C. Leonetti Leaves Allied's Employment for a Position with Nuvasive

Leonetti resigned his sales associate position with Allied on February 19, 2018. (Id. ¶ 28.) After doing so, he began his employment with Nuvasive, a medical device company focused on the design, development and marketing of products for the surgical treatment of spine disorders. (Id. at 14-15.) Nuvasive hired Leonetti to do business in the following hospitals: Hahnemann, Abington, Capital Health, Temple, Einstein, Shriners and Thomas Jefferson. (Doc. No. 30, Ex. C at 17; Pl.'s Ex. 38; Defs.' Ex. 5.) As noted above, Allied sells in these hospitals, a fact of which Leonetti admits he was aware when he accepted a position with Nuvasive. (Doc. No. 30, Ex. C at 17-19.)

Leonetti and Nuvasive began negotiating the terms and conditions of Leonetti's position about one month before Leonetti gave Allied notice of his intent to resign. (Doc. No. 1-1 at 13-15.) Leonetti and Nuvasive were aware of the restrictive covenants in Leonetti's Non-Compete Agreement at the time Nuvasive hired Leonetti, and Allied has since advised Leonetti and Nuvasive that Leonetti is bound by the terms of his Non-Compete Agreement. (Id.)

## III. STANDARD OF REVIEW

### A. Standard Governing a Preliminary Injunction

A preliminary injunction is an "extraordinary remedy." Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). Therefore, preliminary injunctive relief "should be granted only in limited circumstances." Id. (citation omitted). To obtain a preliminary injunction, the moving party must show as a prerequisite

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017) (alteration in original) (quoting Del. River Port Auth. v. Transamerican Trailer Transp., Inc., 501 F.2d 917, 919-20 (3d Cir. 1974)). A party moving for a preliminary injunction must initially "meet the threshold for the first two . . . factors," and only if these "gateway factors" are met should the district court then consider the remaining two factors. Id. at 178. The court must then determine "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Id. at 179.

**IV. ANALYSIS**

**A. Plaintiff's Motion for Preliminary Injunction Will Be Denied**

Plaintiff seeks a preliminary injunction to enjoin Defendants from violating the Non-Compete Agreement. (Doc. No. 2.) For the reasons that follow, Plaintiff has met the standard required for a preliminary injunction.

**1. Likelihood of Success on the Merits**

The first prerequisite to obtaining a preliminary injunction is that Plaintiff must demonstrate he can win on the merits. This "requires a showing significantly better than negligible but not necessarily more likely than not." Reilly, 858 F.3d at 180. "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." Id. at 179 (citation omitted).

Plaintiff is likely to succeed on the merits.

**i. The Zimmer Non-Compete Agreement Is Not Enforceable Because It Was Not Supported by Consideration**

Preliminarily, it must be determined what non-compete agreement controls in this case. Defendants argue that the restrictive covenants in the Zimmer Non-Compete Agreement, executed in 2010, control because the ones in the Non-Compete Agreement, executed prior in 2008, were superseded by the integration clause in the Zimmer Non-Compete Agreement. Defendants further point out that if the non-competition provision in the Zimmer Non-Compete Agreement controls, the Motion for Preliminary Injunction must be denied because there is no likelihood of success on the merits, given that the Complaint refers to the Non-Compete Agreement only and does not premise any claims on the Zimmer Non-Compete Agreement. Plaintiff submits that the Non-Compete Agreement controls because the Zimmer Non-Compete

Agreement lacked requisite consideration to have binding effect. The Court agrees with Plaintiff.

In order for a non-competition covenant to be enforceable, it must relate to a contract for employment, be supported by adequate consideration and be reasonably limited in both time and territory. Davis & Warde, Inc. v. Tripodi, 616 A.2d 1384, 1387 (Pa. Super. Ct. 1992). More specifically, where a restrictive covenant has been entered into between an employer and its employee, Pennsylvania courts have permitted the enforcement of post-employment restraints only where they are ancillary to an employment relationship between the parties, the restrictions are reasonably necessary to protect the employer, and the restrictions are reasonably limited in duration and geographic extent. Sidco Paper Co. v. Aaron, 351 A.2d 250, 252 (Pa. 1976).

"In order for a restrictive covenant entered into subsequent to the commencement of the employee's service to be 'ancillary,' it must be supported by new consideration, which can be in the form of a corresponding benefit or a beneficial change in employment status." Insulation Corp. of Am. v. Brobston, 667 A.2d 729, 733 (Pa. Super. Ct. 1995) (quoting Davis & Warde, Inc., 616 A.2d at 1387). The adequacy of consideration to support a restrictive covenant is an issue of law. Davis & Warde, Inc., 616 A.2d at 1387. In that regard, courts have stated that "as long as the restrictive covenant is an auxiliary part of the taking of employment and not a later attempt to impose additional restrictions on an unsuspecting employee, a contract of employment containing such a covenant is supported by valid consideration and is therefore enforceable." Id. (Pa. Super. Ct. 1992) (citation omitted).

Even when, as here, the non-compete in a later agreement is less restrictive than the non-compete in prior agreement, Pennsylvania law requires new consideration to support the subsequent non-compete. See John G. Bryant Co. v. Sling Testing & Repair, Inc., 369 A.2d 1164

(Pa. 1977); Gordon Wahls Co. v. Linde, 452 A.2d 4 (Pa. Super. Ct. 1982). In John G. Bryant Co., the Pennsylvania Supreme Court required new consideration to support a non-compete covenant that was less restrictive than the non-compete in a prior contract. 369 A.2d at 1169. The court held that new consideration was provided by the reduction in the scope of the non-compete and the restructuring of the business relationship, to the benefit of the employee. Id. at 1169 & n.1. Likewise, the Pennsylvania Superior Court applied the rule requiring new consideration to a second, less restrictive non-compete covenant in Gordon Wahls Co. and found that new consideration was provided by a limitation on the geographic scope of the non-compete and the addition of disability benefits. 452 A.2d at 6.

In this case, while the restrictive covenants in the Zimmer Non-Compete Agreement reduced the scope of restrictions imposed in the Non-Compete Agreement, under Pennsylvania law it appears there needs to be an additional benefit to constitute new consideration for a subsequently executed restrictive covenants. See John G. Bryant Co., 369 A.2d at 1169 & n.1; Gordon Wahls Co., 452 A.2d at 6. There does not appear to be any additional benefit here. When Leonetti signed the Zimmer Non-Compete Agreement in 2010, aside from reduced restrictions of the prior covenants, he did not receive an added benefit, such as disability benefits, a payment in conjunction with signing it or a promotion or change in responsibilities.

Plaintiff testified that after executing the Zimmer Non-Compete Agreement, Leonetti was "promoted" in that he took over another representative's territory and was given "expanded responsibilities." (Doc. No. 30, Ex. B at 50:16 to 53:9). But this was not expressed in the contract and there is no evidence that would otherwise suggest this was a "corresponding benefit" rather than something that happened to occur after the Zimmer Non-Compete Agreement was executed. See Insulation Corp. of Am., 667 A.2d at 733. Therefore, because this

Court must interpret and apply the law of the Supreme Court of Pennsylvania, it will find that the Zimmer Non-Compete Agreement lacked consideration, given that it did not benefit Leonetti apart from lessening the restrictions of the restrictive covenants in the Non-Compete Agreement. Accordingly, the Court will apply the Non-Compete Agreement as the controlling agreement in this case.

### ii. The Non-Compete Agreement Is Enforceable Insofar as It Is Limited to the Sales Territory to Which Leonetti Was Assigned During the Last Eighteen Months of His Employment with Allied

"Restrictive covenants not to compete have always been disfavored in Pennsylvania because they 'have been historically viewed as a trade restraint that prevent[s] a former employee from earning a living." Socko v. Mid-Atlantic Sys. of CPA, Inc., 99 A.3d 928, 931 (Pa. Super. Ct. 2014) (quoting Hess v. Gebhard & Co., 808 A.2d 912, 917 (2002)). But as noted above, Pennsylvania Courts will permit the equitable enforcement of post-employment restraints only where (1) they are incident to an employment relation between the parties to the covenant, (2) the restrictions are reasonably necessary for the protection of the employer and (3) the restrictions are reasonably limited in duration and geographic extent. Sidco Paper Co. v. Aaron, 351 A.2d 250, 252 (Pa. 1976). Defendants do not dispute that Leonetti's non-compete was incident to his employment relationship with Allied or that the eighteen-month duration of the non-competition provision is excessive. See John G. Bryant, Co., 369 A.2d 1164 (upholding three-year restriction); Worldwide Auditing Servs., Inc. v. Richter, 587 A.2d 772 (Pa. Super. Ct. 1991) (upholding two-year restriction). Instead, they contend that the restrictive covenants are not necessary to protect Allied's legitimate interests and not reasonably limited in geographic scope. (Doc. No. 15 at 8; Doc. No. 31 at 4.)

The Pennsylvania Supreme Court has noted that the reasonableness of "the temporal and geographic aspects of a restrictive covenant must be determined in light of the nature of the

employer's interest sought to be protected.  The time should be no longer and the area should be no greater than are reasonably necessary for the protection of that interest." Boldt Mach. & Tools, Inc. v. Wallace, 366 A.2d 902, 907 (Pa. 1976).  As noted above, the temporal restrictions are not challenged and are valid.  See John G. Bryant, Co., 369 A.2d 1164.  The Court therefore will discuss whether the restrictive covenants are necessary to protect Allied's legitimate interests and are reasonably limited in geographic scope.

Applying Pennsylvania law, courts "have found broad geographic restrictions reasonable so long as they are roughly consistent with the scope of the employee's duties." Victaulic v. Tieman, 499 F.3d 227, 237 (3d Cir. 2007).  That said, for cases involving sales representatives with a defined territory,

> [a]n employer's interest in the customer relationships developed by an employee whose contact with customers occurred at the customer's premises extends no farther than the sales territory to which the employee was assigned.  Thus, a restrictive covenant designed to protect this interest is valid only insofar as it is limited to that area.

Boldt Mach. & Tools, Inc., 366 A.2d at 908 (citation omitted).  Importantly, though, an employee challenging the enforceability of a non-compete agreement bears the burden of showing that the covenants are unreasonable in temporal or geographic scope.  Nat'l Bus. Servs., Inc. v. Wright, 2 F. Supp. 2d 701, 708 (E.D. Pa. 1998) (citing John G. Bryant Co., 369 A.2d at 1169).

With regard to scope, the non-competition provision in the Non-Compete Agreement provides as follows:

> 4a. Scope:  This agreement not to engage in competitive activity is limited in scope as follows:
>
> * * *
>
> B) Employee promises not to engage in competitive activity for a period of eighteen (18) consecutive calendar months after the termination, with or without cause, of his/her employment with Allied in:

> i.  Each and every geographic area assigned by Allied to Employee during the eighteen (18) month period preceding termination of Employee's employment with Allied; and
>
> ii. The geographic area attached hereto, incorporated herein and marked as Exhibit "A," which is the geographic area that Allied currently conducts business.

The non-solicitation provision provides the same temporal and geographic restrictions with regard to the activities described in paragraph 5 of the Non-Compete Agreement. Exhibit A lists Delaware, Pennsylvania, New Jersey, Virginia, West Virginia, Maryland, the District of Columbia and the very eastern part of Ohio. Currently, Allied's sales are limited to hospitals in Delaware, Philadelphia and the Philadelphia suburbs. (Doc. No. 30, Ex. B at 11-12.)

Plaintiff interprets these restrictive covenants to preclude Leonetti from soliciting any of its customers or engaging in competitive activity in the geographic areas in which Allied currently operates: Delaware, Philadelphia and the Philadelphia suburbs. (Doc. No. 1-1 at 17; Doc. No. 31, Ex. B at 11-12.)

That said, the language of paragraph 4a(B)(ii) of the non-competition provision comprises a much broader area and includes territories where Leonetti never worked. Thus, this provision is in direct conflict with the Pennsylvania Supreme Court's holding in Boldt Machinery, which held that the trial court erred when it enforced a geographic restriction to the "full extent" of the employer's "total trade territory." 366 A.2d at 908; see also Adhesives Res., Inc. v. Newsom, No. 1:15-cv-0326, 2015 U.S. Dist. LEXIS 48346, at *16 (M.D. Pa. Apr. 13, 2015) ("[I]n the context [of] sales representatives, the Supreme Court of Pennsylvania has held that in order for a non-compete agreement to be reasonably limited, the geographic restriction can extend no farther than the employee's sales territory and customer base.").[4]   Under

---

[4]   The cases Plaintiff cites to support the reasonableness of the scope of the restrictive covenants are all distinguishable because they address senior sales managers, which Leonetti is not.

Pennsylvania law, the Non-Compete Agreement is too widespread because the restrictive covenant, and Plaintiff's interpretation of it, pertain to Allied's total trade territory. See Boldt Mach. & Tools, Inc., 366 A.2d at 908. After Boldt Machinery, the restrictive covenant at issue here is valid only insofar as it is limited to the sales territory to which Leonetti was assigned during the last eighteen months of his employment with Allied. See id.

"[W]here the [non-compete] covenant imposes restrictions broader than necessary to protect the employer," the Pennsylvania Supreme Court has "repeatedly held that a court of equity may grant enforcement limited to those portions of the restrictions which are reasonably necessary for the protection of the employer." Sidco Paper Co. v. Aaron, 351 A.2d 250, 254 (Pa. 1976). Thus, "[a]n overbroad covenant may be enforced 'but only to the extent of the employee's sales territory.'" Certainteed Ceilings Corp. v. Aiken, No. 14-3925, 2014 WL 5461546, at *11 (E.D. Pa. Oct. 27, 2014) (quoting Boldt Mach. & Tools, Inc., 366 A.2d at 908). "Case law empowers Pennsylvania courts to grant partial enforcement of an overbroad covenant either by excising offensive portions of the covenant or by adding language." Bell Fuel Corp. v. Cattolico, 544 A.2d 450, 457 (Pa. Super. Ct. 1988) (citing Sidco Paper Co., 351 A.2d at 255). "In order to do equity between the parties by balancing the interest of the employee in his occupation and of the employer in his established business, the court must have the flexibility to award the employer reasonable protection, although not all the protection for which he may have contracted." Id.

---

Tyco Fire Prods., L.P. v. Fuchs, No. 20 EDA 2017, 2017 WL 5509889 (Pa. Super. Ct. Nov. 17, 2017) (regional sales manager); Certainteed Ceilings Corp. v. Aiken, No. 14-3925, 2014 WL 5461546 (E.D. Pa. Oct. 27, 2014) (architectural sales manager covering a "mid-Atlantic" sales region); Intermetro Indus. Corp. v. Kent, No. 3:CV-07-0075, 2007 WL 1140637 (M.D. Pa. Apr. 17, 2007) (regional sales manager).

Consistent with the above, the Court will enforce the Non-Compete Agreement only insofar as it precludes Leonetti from soliciting any of Allied's customers or engaging in competitive activity with Allied in Leonetti's sales territory during the last eighteen months of his employment with Allied. (Doc. No. 31 at 4.)

The next question the Court must answer, then, is what constitutes Leonetti's sales territory. Defendants argue that Leonetti's sales territory does not consist of large swaths of land but rather is limited to the specific surgeons and medical facilities to which Leonetti was assigned. Plaintiff retorts that this reading of the provision is too narrow, given Allied's custom of having its sales representatives work as a team in the areas Allied conducts business by covering cases assigned to other representatives when need be.

Upon review of the record, there is some merit to Defendants' interpretation of the geographic component in the Non-Compete Agreement. Plaintiff repeatedly testified about assigning specific surgeons or medical facilities to Leonetti and other sales representatives, yet offered no evidence of assigning swaths of land to its representatives.[5] This situation is unlike the one in Boldt Machinery, in which the employee was assigned a sales territory composed of portions of Pennsylvania and southwestern New York, when the employer's total trade territory comprised western Philadelphia, southwestern New York and eastern Ohio. 366 A.2d at 905.

Additionally, Plaintiff testified that he bases his assignment of sales representatives on a "likeability factor" between each representative and customer and "the ability to service on personal relationships." (Doc. No. 30, Ex. B, at 17:2-5.) This testimony tends to show that Allied's legitimate interest in precluding sales representatives from working after they terminate their employment is limited to those customers with whom they had personal relationships.

---

[5] (E.g., Doc. No. 30, Ex. B at 99:9-21, 103:21-104:20, 104:25-105:9, 105:10-20, 113:25-114:8, 116:16-22, 121:4-123:8.)

Further evidence of this is in the language of section 4 of the Non-Compete Agreement, which provides in relevant part as follows:

> The Employee recognizes that in each of the highly competitive businesses in which Allied is engaged, personal contact is important in securing new customers and in retaining the accounts and good will of present customers. Personal contact is a valuable asset and is an integral part of protecting the business of Allied. The Employee recognizes that his/her position requires him/her to have substantial contact with Allied customers, for that reason, he/she is in a position to take for his/her benefit the good will Allied presently has as well as the good will that Allied pays Employee to develop and maintain for Allied's benefit.

(Pl.'s Ex. 4 at 1.)

Plaintiff advocates for a broader reading than what Defendants propose of what constitutes a representative's sales territory. Plaintiff points out that there is clear evidence that in the eighteen months before Leonetti resigned from Allied, he serviced Allied's customers in and around Philadelphia.[6] Further, Leonetti admitted at the hearing that Allied's custom was to have its sales representatives work as a team in the areas Allied conducts business by covering cases assigned to other representatives when needed.[7] Therefore, Allied appears to have a

---

[6] (Doc. No. 30, Ex. B at 18, 50, 52, 57-58, 66-68; id., Ex. C at 12, 42-47; Pl.'s Exs. 17-23.)

[7] For example, Leonetti testified as follows in answer to questions from counsel for Plaintiff:

> Q: [W]e're not challenging that you m[o]st often work in Delaware but you, on occasion, were asked to cover cases outside of Delaware, right?
>
> A: Yes, if I didn't have any cases going on in my area, I would offer to help in other areas.
>
> Q: And if perhaps you needed help somebody from Philadelphia . . . might come in and cover one of your cases in Delaware, correct?
>
> A: Correct
>
> Q: That's how your team worked. If you needed coverage, you got coverage from a fellow sales associate.
>
> A: Most of the time.

legitimate interest that extends to the territory in which a sales representative is active and not merely to the specific hospitals to which that representative was assigned. Additionally, the intent of the parties to the Non-Compete Agreement was that the geographic restriction encompasses an area beyond the specific hospitals to which Leonetti was assigned since it was contemplated that Leonetti would often cover additional hospitals and surgeons.

Given the above, the Court concludes that Leonetti's sales territory extends beyond the specific hospitals and surgeons to which Leonetti was assigned and instead encompasses the broader area in which he was active, namely Delaware, Philadelphia and the Philadelphia suburbs. Even though this area constitutes the entirety of Allied's current trade territory, the Court's finding is not in conflict with the holding in <u>Boldt Machinery</u> because there, the employee's territory was only a portion of the employer's total trade territory, whereas here Leonetti's territory and customer base extended as far as Allied currently conducts business. <u>See</u> 366 A.2d at 905.

For these reasons, the Court will enforce the restrictions in the Non-Compete Agreement only insofar as they preclude Leonetti from soliciting any of Allied's customers or engaging in competitive activity with Allied in Delaware as well as Philadelphia and the Philadelphia suburbs.

### iii. Leonetti Is in Breach of the Non-Solicitation and Non-Competition Provisions of the Non-Compete Agreement

Under the non-solicitation and non-competition provisions of the Non-Compete Agreement, Leonetti is barred from soliciting any of Allied's customers or engaging in competitive activity with Allied in Delaware, Philadelphia and the Philadelphia suburbs for a period of eighteen months after termination of his employment with Allied.

(Doc. No. 30, Ex. C at 42:5-16.)

Leonetti is in violation of the non-solicitation provision. Hospitals and networks Allied calls upon include Thomas Jefferson, Penn, Hahnemann, Shriners, Abington, Capital Health, Temple, Einstein, Paoli, Coatesville, Capital Health and Virtua. (Doc. No. 30, Ex. B at 12, 92-93.) Leonetti acknowledged that he was hired by Nuvasive to do business in Hahnemann, Abington, Capital Health, Temple, Einstein, Shriners and Thomas Jefferson. (Id., Ex. C at 17; Pl.'s Ex. 38; Defs.' Ex. 5.) He admits that Allied sells in these hospitals and that he was aware of this fact when he took the job with Nuvasive. (Doc. No. 30, Ex. C at 17-19.)

Leonetti even has admitted to accepting business from Allied's customers. When asked at the hearing whether he can agree that he is engaging in conduct barred by the non-solicitation provision, which states that he shall not "canvas, solicit, or accept any similar business from any customer of Allied," he answered: "I guess, yeah." (Id. at 24:13-18.) But beyond merely accepting business from Allied's customers, Leonetti is actively soliciting business from doctors he knows are served by Allied. Before starting with Nuvasive, Leonetti knew Allied sold to the orthopedic surgeons at Abington Hospital. (Id. at 39:9-12.) Notwithstanding that knowledge, on June 12, 2018 and June 14, 2018, Leonetti took two Abington surgeons, Doctors Gopez and Yoon, and their staffs to lunch in what Leonetti admitted was an attempt to gain their business. (Id. at 41:1-5.) In 2017 alone, Allied did nearly $200,000 worth of business with Doctors Gopez and Yoon. (Pl.'s Ex. 5.)

Leonetti also is in violation of the non-competition provision. The non-competition provision bars Leonetti from engaging in competitive activity for a period of eighteen consecutive calendar months after termination of employment. Leonetti admits that he is doing the same job with Nuvasive that he did with Allied and that Allied is a direct competitor with Nuvasive. (Doc. No. 30, Ex. C at 3-2.) Given this admission and that he is active in the same

territory in which he was active with Allied, Leonetti is in violation of the non-competition provision.

Because Leonetti is in breach of the non-solicitation and non-competition provisions of the Non-Compete Agreement, Allied has a substantial likelihood of success on the merits of its claims. Therefore, the first prong of <u>Reilly</u> weighs in favor of finding that the issuance of a preliminary injunction is appropriate.

### 2. Irreparable Injury

The "irreparable injury" prong of <u>Reilly</u> requires courts to determine whether it is "more likely than not [Plaintiff will] suffer irreparable harm in the absence of preliminary relief." <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 179 (3d Cir. 2017). "Under Pennsylvania law, 'the threat of the unbridled continuation of the violation [of a restrictive covenant] and the resultant incalculable damage to the former employer's business' establishes irreparable harm." <u>Healthcare Servs. Grp., Inc. v. Fay</u>, 597 F. App'x 102, 103-04 (3d Cir. 2015) (alteration in original) (quoting <u>John G. Bryant Co. v. Sling Testing & Repair, Inc.</u>, 369 A.2d 1164, 1167 (Pa. 1977)). This is what Allied faces here: an employee who admittedly disregarded restrictive covenants and, in the absence of equitable relief, might continue to do so.

Further, Leonetti developed extensive customer relationships while employed by Allied, which constitutes the goodwill of Allied. Leonetti also had intimate knowledge of Allied's business and customers, which he appears to have called on and likely will continue to do so while working with Nuvasive. (<u>See</u> Doc. No. 31, Ex. C at 41:1-5); <u>Nat'l Bus. Servs., Inc. v. Wright</u>, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1988) (finding evidence of irreparable harm where employee had "wide-ranging knowledge of former [employer's] business, products and

customers, which would be impossible for her not to call on if she was working for [employer's] direct competitor").

Additional evidence of irreparable injury is found in the language of the Non-Compete Agreement itself, which states: "If, after leaving Allied's employment, Employee takes advantage of such confidential and proprietary information, then the competitive advantage that Allied created though its efforts and investment will be irreparably harmed. For these reasons, the Employee agrees that he/she will not engage in any competitive activity." (Pl.'s Ex. 4 ¶ 4.) When determining whether a breach of a restrictive covenant will cause irreparable harm, courts find it relevant that the non-compete agreement expressly states that money damages will be inadequate and that the parties agree to injunctive relief in the event of a breach. <u>Quaker Chem. Corp v. Varga</u>, 509 F. Supp. 2d 469, 479 (E.D. Pa. 2007).

Defendants contend that Plaintiff fails to establish that it will suffer irreparable harm because Plaintiff admits it has no knowledge of Leonetti converting any of its sales, acknowledges having no knowledge of Defendants misappropriating its trade secrets and believes Nuvasive instructed Leonetti not to utilize any of Allied's confidential or proprietary information. (Doc. No. 31 at 8 (citing Doc. No. 30, Ex. B at 120:5 to 121:3, 139:22 to 143:2).) Additionally, Defendants point out that Nuvasive prohibited Leonetti from working in the medical facilities Plaintiff assigned to Leonetti during the last eighteen months of his employment and sharing information about them with any other Nuvasive sales representatives (<u>id.</u> (citing Doc. No. 30, Ex. C at 56:4-24)), and that Plaintiff has not observed Leonetti working in those medical facilities (<u>id.</u> (citing Doc. No. 30, Ex. B at 113:25 to 114:8)).

Notwithstanding the truth of these assertions, they do not discount the threat of the unbridled continuation of the violation of the restrictive covenants by Leonetti, which the

Pennsylvania Supreme Court noted results in "incalculable damage" to the former employer's business and thus establishes irreparable harm. John G. Bryant Co., 369 A.2d at 1167. Leonetti admittedly disregarded restrictive covenants and, in the absence of equitable relief, might continue to do so.

For these reasons, irreparable harm is established.

### 3. The Possibility of Harm to Other Interested Persons from the Grant or Denial of the Injunction

The third Reilly factor considers the possibility of harm to other interested persons from the grant or denial of a preliminary injunction. Here, the requested injunction will have a damaging effect on Leonetti's young family. Leonetti is thirty-three years old and has a wife who does not work and a young daughter. (Doc. No. 30, Ex. B at 100:25 to 101:10; id., Ex. C at 52:4 to 54:3.) Leonetti has never worked in any other field and took a pay cut to move his family from Delaware to the Philadelphia area so they could be closer to his parents. (Id., Ex. C at 52:14 to 54:3.) There is no guarantee Nuvasive will continue to employ Leonetti if he is unable to work in the territory Nuvasive assigned to him. (Id.)

On the other hand, Nuvasive is a national company. Leonetti only is being prevented from soliciting any of Allied's customers or engaging in competitive activity in Delaware, Philadelphia and the Philadelphia suburbs for a period of eighteen months. (Doc. No. 30, Ex. B at 11-12.) Therefore, he has the option of remaining in the area and seeking a position that is not competitive with Allied. Nuvasive may employ him in any state or area other than Delaware, Philadelphia and the Philadelphia suburbs. See, e.g., Graphic Mgmt. Assocs. v. Hatt, No. 97-cv-6961, 1998 WL 159035, at *18 (E.D. Pa. Mar. 18, 1998) (finding employee would not be irreparably harmed, where he could work outside of North America or for a non-competitor of former employer).

Upon consideration of the above, this factor weighs in Plaintiff's favor. The Court is not persuaded by Defendants' contention that an injunction would "devastate" Leonetti's young family.

### 4. The Public Interest

The last <u>Reilly</u> factor considers the public interest. The public interest is best served in this case by upholding the restrictive covenants freely entered into by Leonetti. Granting a preliminary injunction to Allied "will discourage unfair competition, the misappropriation and wrongful use of confidential information and trade secrets and the disavowal of freely contracted obligations." <u>Nat'l Bus. Servs., Inc. v. Wright</u>, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998) (citing <u>Graphic Mgmt. Assocs.</u>, 1998 WL 159035, at *19).

Upon review of all the <u>Reilly</u> factors, the four factors weigh in favor of granting a preliminary injunction and none weighs strongly against doing so. Therefore, a preliminary injunction is appropriate in this case.

## V. CONCLUSION

For these reasons, Plaintiff's Motion for Preliminary Injunction (Doc. No. 10) will be granted. An appropriate Order follows.