IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLIED ORTHOPEDIC ASSOCIATES, INC.,<br><br>                Plaintiff,<br><br>   v.<br><br>BRIAN LEONETTI, et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 18-01566 |

**OPINION**

Slomsky, J.                                                                                                                                         October 5, 2018

## I.    INTRODUCTION

Plaintiff Allied Orthopedic Associates, Inc. ("Allied") brought this suit against Defendants Brian Leonetti ("Leonetti"), a former employee, and Nuvasive, Inc., ("Nuvasive") (collectively, "Defendants"), an alleged competitor of Allied with which Leonetti began employment after leaving Allied. (Doc. No. 1-1.) Allied and Nuvasive are companies in the highly competitive industry of selling medical equipment. Leonetti was employed at Allied from May 15, 2008 to February 19, 2018. (Doc. No. 34 at 2-7.) During his employment at Allied, Leonetti signed two agreements containing confidentiality, non-solicitation, and non-compete provisions. (Id.) After he resigned from Allied, he began employment with Nuvasive and thereafter violated his first non-compete agreement. (Id. at 7.)

On May 17, 2018, Plaintiff filed a Motion for Preliminary Injunction seeking to enforce the first Non-Compete agreement with Leonetti. (Doc. No. 10.) On August 8 and 9, 2018, the Court held a two-day hearing on the Motion. (Doc. Nos. 26, 27.) On August 24, 2018, the Court

issued an Opinion and Order granting Plaintiff's Motion for Preliminary Injunction. (Doc. Nos. 34, 35.)

On August 28, 2018, Defendants filed an appeal of the Injunction Order to the United States Court of Appeals for the Third Circuit. (Doc. No. 36.) Defendants also filed a Motion in this Court to Suspend or Modify [the Preliminary Injunction] Pursuant to Federal Rule of Civil Procedure 62. (Doc. No. 37.) On September 11, 2018, Plaintiff filed a Response to Defendants' Motion to Suspend or Modify [the Preliminary Injunction] (Doc. No. 40), and on September 18, 2018, Defendants filed a Reply. (Doc. No. 42.) Defendants' Motion is now ripe for decision. For the reasons that follow, the Court will deny the Motion to Suspend or Modify the injunction.

## II.  BACKGROUND [1]

Allied is a manufacturer's sales representative[2] that sells medical equipment used in the surgical treatment of spine and other orthopedic disorders. (Doc. No. 1-1 ¶ 5.) Nuvasive is a medical device company focused on the design, development and marketing of products for the surgical treatment of spine disorders. (Doc. No. 1-1 ¶ 27.)

On May 6, 2008, Allied offered Leonetti a position as a sales associate contingent on the execution of a non-competition agreement. (Doc. No. 1-1 ¶ 7.) At that point, Leonetti was a recent college graduate with no training or experience as a sales associate in the medical device industry working for a manufacturer's representative. (Doc. No. 1-1 ¶ 19.) On May 15, 2008,

---

[1] The August 24, 2018 Opinion of the Court granting the preliminary injunction (Doc. No. 34 at 2-8) contains a complete statement of facts. This Background Section contains facts that are relevant to the Court's decision on the Motion to Suspend or Modify Pursuant to Federal Rule of Civil Procedure 62.

[2] A manufacturer's sales representative is responsible for selling products on behalf of a company, maintaining relationships with clients, and supplying existing clients with medical tools to fit their needs.

2

Leonetti began his employment with Allied and executed a Non-Competition, Non-Solicitation and Confidentiality Agreement ("Non-Compete Agreement"). (Doc. No. 30, Pl.'s Ex. 4.)

Among other terms, the Non-Compete Agreement contained confidentiality and trade secret coverage (Section 3), a non-compete provision barring Leonetti from engaging in competitive activity with Allied for a period of eighteen (18) months after termination of employment, with or without cause (Section 4 and 4a), and a non-solicitation provision prohibiting Leonetti from, inter alia, soliciting or accepting business from Allied's customers for the same period (Section 5 and 5a). (Id.)

At times, Allied's clients required that its sales representatives agree to restrictive covenants to avoid being placed at a competitive disadvantage should a sales representative decide to work for a competitor. (Doc. No. 1-1 ¶ 12.) On or about January 1, 2010, Zimmer Spine, Inc. ("Zimmer"), an Allied client and a direct competitor of Defendant Nuvasive, executed a Sales Representative Agreement that appointed Allied to sell Zimmer's products. (Id. ¶ 13.) On January 25, 2010, Allied and Leonetti executed another Confidentiality, Non-Competition and Non-Solicitation Agreement (the "Zimmer Non-Compete Agreement.") (Doc. No. 30, Pl.'s Ex. 5.)

The geographic area in which Allied did business at the time Leonetti commenced employment with Allied included New Jersey, Pennsylvania, Delaware, Maryland, Virginia, the District of Columbia, West Virginia (Charleston and the surrounding area), and the eastern part of Ohio. (Doc. No. 1-1 ¶ 16.) After selling segments of its business, however, Allied currently operates only in Delaware and Philadelphia, and the Philadelphia suburbs.[3] Within this

---

[3] In the Complaint, Plaintiff asserted that Allied's sales are limited to eastern Pennsylvania, southern New Jersey and Delaware. (Id.) It was revealed at the hearing, however, that

geographic area, the hospitals and hospital networks that Allied solicits business from include Thomas Jefferson, Penn, Hahnemann, Shriners, Abington, Temple, Einstein, Paoli, Coatesville, Capital Health and Virtua. (Id., Ex. C at 12, 92-93.)

During his employment with Allied, Leonetti was assigned to six surgeons−Doctors Bose, Boulus, Eskander, Fischer, Murray and Rastogi. These surgeons operated at three hospitals in Delaware (A.I Dupont, Christiana and St. Francis), a surgery center in Maryland, and Chester County hospital located in Philadelphia. (Id., Ex. B at 99:15 to 100:11, 114:17 to 115:4; 99:7-24, 103:25 to 105:20; id., Ex. C at 56:4-9.) Additionally, as part of Allied's sales associates team, Leonetti covered for other sales associates within the eastern Pennsylvania, southern New Jersey, and Delaware area, as necessary. (Doc. No. 1-1 ¶ 18.)

Back in June 2008, Allied sent Leonetti to a one-week training course at the Zimmer Spine Sales Training Program, which addressed topics including spine anatomy, indications for surgery, spinal instrumentation, lumbar and cervical interbody fusion devices, lumbar and cervical spinal fixation devices and allograft bone products. (Id. ¶ 20.) In addition, the training included education in blood borne pathogen safety, operating room protocol and HIPAA fundamentals. (Id.)

In 2017, Allied sent Leonetti to Las Vegas for Timberline Lateral Training. (Id. ¶ 24.) This program provided training on a product that is directly competitive with a product manufactured and sold by Nuvasive. (Id.)

Leonetti's position and responsibilities as a sales associate required that he develop a specialized knowledge of the products used and procedures implemented by Allied's clients. (Id. ¶ 25.) Further, he was expected to establish relationships with physicians, hospital networks and

---

Allied's sales currently are limited to hospitals in Delaware, Philadelphia and the Philadelphia suburbs. (Doc. No. 30 at 11; id., Ex. B at 11-12.)

4

other health care providers throughout his sales territory and attend surgeries in which the products of Allied's clients would be used. (Id.) He also was required to understand the marketing strategies of Allied and Allied's clients and to acquire knowledge of the company's strategic plans, pricing practices, product margins, product information and other confidential information and trade secrets. (Id.)

On February 19, 2018, Leonetti resigned from his sales associate position with Allied. (Doc. No. 1-1 ¶ 28.) After doing so, he began employment with Nuvasive and started doing business at the following hospitals: Hahnemann, Abington, Capital Health, Temple, Einstein, Shriners and Thomas Jefferson. (Doc. No. 30, Ex. C at 17; Pl.'s Ex. 38; Defs.' Ex. 5.) As noted above, Allied sells in these hospitals. Leonetti admitted at the hearing on the preliminary injunction held on August 9, 2018 that he was aware of this fact when he accepted the position with Nuvasive. (Id., Ex. C at 17-19.)

He also admitted that he had accepted business from Allied's customers. (Id., Ex. C at 24:13-18.) Additionally, Leonetti said that he solicited business from doctors that he knows are served by Allied.[4] Since being employed at Nuvasive, Leonetti performs the same job functions that he did when employed at Allied.

### III.   STANDARD OF REVIEW

In Defendants' Motion to Suspend or Modify [the Preliminary Injunction] under Federal Rule of Civil Procedure 62, they request that the Court "suspend the issuance of the injunction pending appeal or modify it so that Leonetti can work for Nuvasive in areas which Allied never assigned to him and in which he possesses none of Allied's trade secrets or confidential

---

[4] For example, on June 12, 2018 and June 14, 2018, he took two Abington hospital surgeons and their staffs to lunch, which he admitted was an attempt to gain their business, despite knowing that Allied served those surgeons. (Id., Ex. C at 41:1-5.)

information, including Philadelphia." (Doc. No. 38 at 3) (emphasis added). In the Order granting the preliminary injunction, the Court enjoined Leonetti from "working with or for Defendant Nuvasive, Inc. in Philadelphia and the Philadelphia suburbs or from otherwise engaging in competitive activity against Plaintiff in regard to medical facilities or doctors in Delaware, Philadelphia and the Philadelphia suburbs that are Plaintiff's customers . . . ." (Doc. No. 35 ¶ 2.) In effect, Defendants are requesting that the Court stay the injunction pending appeal to allow Leonetti to work for Nuvasive in the Philadelphia area, and possibly even in Delaware.

Two legal precepts apply here. First, similar to the standards considered by this Court when issuing a preliminary injunction, under the traditional standard for a stay of an injunction pending judicial review, the court considers the following four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Nken v. Holder, 556 U.S. 418, 426 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776, 107 S. Ct. 2113 (1987)). "There is substantial overlap between these and the factors governing preliminary injunctions, . . . not because the two are one in the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." Id. at 434 (internal citations omitted).

Second, Federal Rule of Civil Procedure 62(c) describes the district court's power over an injunction order on appeal. It provides in relevant part:

> Injunction Pending Appeal. While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(c).

## IV. ANALYSIS

### A. The Court Will Not Stay the Injunction

On appeal, Defendants bear the burden of showing that circumstances justify an exercise of the Court's discretion to stay an injunction. Clinton v. Jones, 520 U.S. 681, 708, 117 S. Ct. 1636 (1997). Defendants have not met this burden under any of the factors described above.

#### 1. Allied Is Likely To Succeed On The Merits On Appeal

Defendants argue that they, not Allied, will prevail on appeal because the Zimmer Agreement is the only non-compete agreement that is enforceable. They contend that it is supported by adequate consideration. Because Plaintiff raised the issue of lack of consideration for the Zimmer Agreement for the first time in its post-hearing brief, Defendants argue they were denied proper notice of this issue in violation of due process. (Doc. No. 38 at 7-19.) The Court is not persuaded by these arguments and, as noted in the August 24, 2018 Opinion, finds that Allied is likely to succeed on the merits.

##### a) The First Non-Compete Agreement is the Only Enforceable Agreement Between Allied And Leonetti

In the August 24, 2018 Opinion, the Court explained why the first Non-Compete Agreement is enforceable and had been violated by Leonetti. In the instant Motion to Stay or Modify [the Preliminary Injunction], Defendants contend that the first Non-Compete Agreement was superseded by the Zimmer Agreement and there was adequate consideration between Allied and Leonetti for the Zimmer Agreement to be enforceable. They contend that the Zimmer Agreement:

> provided Leonetti with access to Zimmer's confidential information; allowed Leonetti to sell Zimmer products; eliminated Allied's right to inform Leonetti's future employers of his job performance without repercussion as provided section 17; reduced the situations in which Allied could assign its rights from any affiliated or subsidiary corporations to only companies that acquire its assets and

continue to represent Zimmer Biomet, and recognized that Allied and Leonetti exchanged other valuable consideration for agreeing to it.

(Doc. No. 38 at 11.) Additionally, Defendants argue that as a result of the Zimmer Agreement, Allied trained Leonetti at its own expense. (Id. at 13.)

In its Opinion, the Court explained the application of Pennsylvania law on the enforceability of non-compete agreements. (Doc. No. 34 at 9-12.) Pennsylvania law requires "new consideration" in the form of an "additional benefit" to the employee to support a subsequent non-compete agreement. John G. Bryant Co. v. Sling Testing & Repair, Inc., 369 A.2d 1164, 1168-69 (Pa. 1977); Gordon Wahls Co. v. Linde, 452 A.2d 4, 6 (Pa. Super. Ct. 1982). Defendants challenge the application of this law here, arguing that these cases do not preclude reduction in the scope of an employee's non-compete agreement from counting as the requisite "new consideration" for a subsequent non-compete agreement. (Doc. No. 38 at 8-10.)

As discussed in the August 24, 2018 Opinion, the Court is not persuaded Defendants have established that any changes in Leonetti's position after the Zimmer Agreement was executed constitute new consideration as opposed to incidental changes in Leonetti's employment duties that happened to occur after the Zimmer Agreement went into effect. After acquiring Zimmer as a client, there may have been a change or addition to assignments given to Allied sales representatives, but the Zimmer Agreement contained no additional benefits to Leonetti, either directly written in the agreement or indirectly inferred through parole evidence that specifically resulted from signing the Zimmer Agreement.

Moreover, even if the Zimmer Agreement governed Allied and Leonetti's relationship, injunctive relief would still be appropriate. Even though the terms of the Non-Compete Agreement and the Zimmer Agreement are not the same, the Zimmer Agreement also has geographical restrictions, non-competition and non-solicitation provisions. (Doc. No. 30, Pl.'s

Ex. 5.) Therefore, even if the Zimmer Agreement governed, Leonetti would be violating it for the same reasons he violated the first Non-Compete Agreement.

### b) Defendants' Due Process Rights Were Not Violated

Defendants claim they did not have fair opportunity to be heard at a hearing on Plaintiff's argument that the Zimmer Agreement was not supported by adequate consideration. They contend that Plaintiff raised the issue of consideration for the first time in its post-hearing brief.[5] (Doc. No. 38 at 19.) The Court does not agree.

First, on August 17, 2018, Plaintiff and Defendant filed their post-hearing memoranda. (Doc Nos. 30, 31.) Plaintiff argued lack of consideration in its memorandum. (Doc. No. 30.) A week later, on August 24, 2018, the Court issued the Opinion and Order granting Plaintiff's Motion for a Preliminary Injunction. (Doc. Nos. 34, 35.) Between August 17, 2018 and August 23, 2018, Defendants had notice of Plaintiff's assertion that the Zimmer Agreement is unenforceable due to lack of consideration. They did not request leave of court to respond to this argument and made no effort to raise the due process argument during this time frame. They simply awaited the Court's decision on the preliminary injunction. Now dissatisfied with the Court's decision, they are raising the issue of consideration.

Second, Defendants recognized that consideration for the Zimmer Agreement was an issue in this case when they asserted it in their Answer to the Complaint. (Doc. No. 8 at 6.) The fact that they did not raise it subsequently does not mean that they were deprived of notice on this issue.

---

[5] Defendants claim a violation of Fed. R. Civ. P. 65(a). It provides, in relevant part, as follows:

> "Notice. The court may issue a preliminary injunction only on notice to the adverse party."

Defendants had notice that Plaintiff sought a preliminary injunction.

Thus, for these reasons and for those set forth in the Opinion dated August 24, 2018, Defendants have not made a strong showing that they are likely to prevail on the merits. Therefore, Defendants have not met their burden for a stay of the injunction under this factor.

### 2. Defendants Will Not Be Irreparably Harmed Absent a Stay

In the Opinion dated August 24, 2018, the Court considered the damaging effect on Leonetti's family, Nuvasive's status as a national company, and the restrictions on Leonetti under the Non-Compete Agreement. (Doc. No. 34 at 22.) Defendants' assertions that Leonetti will be "out of work" for eighteen (18) months, and that Nuvasive will be unable to properly support its surgeons in the Philadelphia area were unpersuasive then and are not persuasive now. (Doc. No. 38 at 5-6.) Leonetti can seek employment in a different geographical area, and Nuvasive can hire other sales representatives to support its Philadelphia customers. Further, even if Nuvasive relied upon the validity of the Zimmer Agreement in hiring Leonetti, it still should not have agreed to an employment start date before February 1, 2019, the date on which his post-employment obligations to Allied extended under that agreement. (Doc. No. 30, Pl.'s Ex. 5, 38, 39.)

Accordingly, Leonetti and Nuvasive will not be irreparably injured absent a stay of the preliminary injunction.

### 3. The Issuance of a Stay Would Substantially Injure Allied

If Defendants' request for a stay is granted, it is likely that Leonetti would return to his position at Nuvasive, where he would regularly serve as a sales representative in Philadelphia, its suburbs and Delaware, areas restricted by the Non-Compete Agreement and where he has intimate knowledge of Allied's business and customers.

Defendants contend, however, that allowing Leonetti to work outside the accounts that Allied assigned to him while this matter is on appeal would not harm Allied. (Doc. No. 38 at 6.)

The Court is not convinced that this suggestion would overcome "the threat of unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention." John G. Bryant Co. v. Sling Testing & Repair, Inc., 396 A.2d 1164, 1167 (Pa. 1977)). In other words, allowing Leonetti to re-enter the Philadelphia and Delaware markets as a sales representative for Defendant Nuvasive, Allied's competitor, where he admittedly encounters Allied's clients while on the job, and has intimate knowledge of Allied's business, would irreparably injure Allied's business.

For these reasons, Defendants have not shown that a stay of the injunction would not substantially harm Allied. Therefore, a stay of the injunction is not warranted under this factor.

### 4. The Public Interest is Best Served by Upholding the Non-Compete Agreement

Defendants' argument that employers should not be allowed to disavow promises to its employees as in the Zimmer Agreement is misguided. (Doc. No. 38 at 7.) Even if the Court were to agree that the Zimmer Agreement controls, the preliminary injunction would still be necessary to prohibit Leonetti from violating the restrictive covenants contained therein because under the Zimmer Agreement, Leonetti is barred from competitive activity for twelve (12) months after his resignation from Allied.

Finally, the Court maintains its conclusion that the public interest is best served by enforcing the first Non-Compete Agreement.

### B. The Court Will Not Suspend or Modify the Injunction

For the reasons discussed above, this Court will not suspend or modify the preliminary injunction under Federal Rule of Civil Procedure 62(a), supra. Any modification of the preliminary injunction consistent with Defendants' Motion (Doc. Nos. 37, 38) would effectively operate as a stay of the injunction, an action that is not warranted here.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Suspend or Modify [the Preliminary Injunction] under Fed. R. Civ. P. 62(a) will be denied. An appropriate Order follows.